Employee Benefits Administrative Committee of Mueller Group Good morning. Good morning. May it please the Court, my name is Clay Williams. I'll be arguing on behalf of the participants in the Mueller pension plan. Your Honors, in this case, District Court erroneously granted judgment to Mueller after deferring to its wrong interpretation of clear plan terms, specifically a special early retirement benefit that is in the Mueller plan. A participant is entitled to a special early retirement benefit if his or her termination date is connected to either a layoff or termination by permanent plant shutdown. Here, as conceded by the defendants and as the District Court found in the first part of its opinion, the participants incurred a termination date on the closing date when they lost their employment with Mueller-controlled U.S. Pike due to Mueller's discontinuation of operations at the Bessemer facility. Termination of what? Termination of their employment, Your Honor. I don't recall that the appellee acknowledged that. They said they were terminated under the plan. Yes, Your Honor. They disputed they were terminated in the reality that they lost their jobs. Yes, Your Honor. So what Mueller, Mueller separates this issue of or separates, falsely I believe, termination under the plan and termination in actuality. But what we're talking about is a plan benefit. So termination under the plan is what should govern this benefit because it's what, it's what conditions the language refers to whose termination date occurs prior to his normal retirement age because he is, one, laid off and not recalled within two years, or two, terminated by permanent plant shutdown. We agree those are the terms we're looking at, right? Yes, Your Honor, we do. Would you tell me what definition we ought to give to the phrase laid off and not recalled? There's no definition in the plan of the term laid off, so we would look for a normal dictionary understanding. I guess you would agree with that. Yes, Your Honor, absolutely do. So what is the, what is your understanding of what that phrase means? It's being terminated by one's employer through no fault of their own, and that is exactly what the Third Amendment effectuates. It says laid off and not recalled. Correct, Your Honor. What does laid off mean to you? It means, well, termination, terminated by their employer. And so I think the issue here, Your Honor, is who the employer was prior to the closing date, as of midnight March 31st, 2012. And what the purchase agreement here establishes is that there are two separate employers here. There's Mueller-controlled U.S. Pipe as of 1159, March 31st, and there's USP-controlled U.S. Pipe that picks up on April 1st. Under the purchase agreement, there is, the purchase agreement under Section 3.17, little a, Romanette 2, says that all collective bargaining agreements are disclaimed. What this signifies is a new employment and a new day because, excuse me, USP-controlled U.S. Pipe. Let me put it really bluntly. The problem that I have with your argument, and I may misapprehend it, but the problem that I have is when I look for meaning to the term laid off, I look to something like suspended or terminated due to no fault of the employee, ceased to employ the employee, and as best I can tell, he continued to work, albeit under a different employer, but he continued to work, and he continued to work at the same plant, albeit under different ownership, and that that plant was never shut down. Well, Your Honor, this It strikes me that the argument is almost a metaphysical one. It's, he wasn't laid off in the commonly understood sense, and the plant wasn't shut down in the commonly understood sense, but that doesn't matter because the employer's changed. That's the essence of the argument. Well, Your Honor, yes, the employer has changed, but what Mueller's argument here does, and I believe this picks up with Hedrick, specifically the Hedrick case that they cite, is that this notion of what happens after the layoff, these are conditions that they're interpreting into the plan that just aren't there. There's nothing that has to follow the actual layoff event, so what happens after the layoff is not what this benefit is conditioned on. It is as of the layoff at that point in time, so Your argument, though, has to be that he was laid off notwithstanding the fact that he continued to work at the same plant under the same terms and conditions, but that he continued to work under the same terms and conditions under the rubric of different management. Well, Your Honor, our Right? Isn't that the argument? Our argument is that there is a discontinuation of employment and that someone else took up the baton. It's that, Your Honor, because with this mark in the change of, this change of employment wasn't just really a handoff. As Mueller says, Mueller says that they had to, they reassumed the obligations under the collective barting agreements. One would not have to reassume obligations that were passing along with the entity, so if a new employer comes along and says, yes, we'll be bound by the collective barting agreements, that doesn't change what happened up to that point that those obligations were cut off. Other indications that there was a brand new employment was that the participants lost Did the Bessemer plant ever shut down? From Mueller's standpoint, yes, Your Honor, it did. Mueller discontinued its operations there as it reported in its statement. Is that what I'm asking? Did the plant shut the doors? Did they padlock the doors and toss the folks out and stop the manufacturing that they were involved in? No, Your Honor, they didn't, but as we construe, as we construe this plan language, the termination that is in the special early retirement benefits, especially when it says in connection with the permanent plant shutdown, terminated by permanent plant shutdown, one has to look at who did the terminating. The terminating here would be the Mueller-controlled U.S. pipe before the closing date, so when looked at from Mueller's Help me with this. Where does the language tell me that I have to look at who did the termination as opposed to whether he was laid off or not? Well, Your Honor, it's the plan language itself, so the terminated by permanent plant shutdown, terminated as part of what was changed under the Third Amendment. I mean, it talks about the change of the termination date, but it also talks about it as being terminated from one's employer, so this is imported into what happens under the Third Amendment, what the Third Amendment says would happen. Mr. Williams, your claim is based on your assertion that Mueller was the employer, correct? Yes, Your Honor. And if Mueller is not the employer, then your claims go away, correct? No, Your Honor, I disagree to this extent, so the Third Amendment does not Well, let me go one step further. Maybe I'm misunderstanding the transaction and corporate structure, but it strikes me as this was a pure case of a holding company or a parent company acquiring what would be the equivalent of stock if it were a corporation. Here it was membership interest, so Mueller, the holding company, acquires a subsidiary, U.S. Pipe. U.S. Pipe, prior to that transaction, employed your clients. Mueller then sold the interests to the successor corporation or LLC, but the employment never changed, as I see it. Otherwise, if you're correct, you would have to disregard the corporate structure and have something in the nature of alter ego, and that is go through the corporate structure and ignore it. That just seems pretty straightforward, an issue of corporate law. Well, Your Honor, two points. First, under the plan says that this is construed as a termination, so in plan world, which is what Government has done. I know, but the wording on that is termination under the plan. The next thing that bothers me, that I have a tough time saying, you say the plan was shut down for purpose. I'm looking at the appeal. Yes, Your Honor. When you kind of, your co-counsel kind of firmed up his position. The plan was shut down for purposes of a Mueller operation. What does that mean? Mueller never operated the plan. U.S. Pipe operated the plan. Well, Your Honor, so Mueller, U.S. Pipe was a part of the Mueller control group, and Mueller operated, Mueller is the one that provided all the benefits, one that funded all the benefits, all of these things. So, when the U.S. Pipe transitioned to USP, all of what indicates a substantive change, other than just the, you know, there was no change on the name outside the factory, the factory was the same, but you had... I think here's the, I see the basic problem with your argument. You're confusing the plan with the employment situation. You can have US Pipe as the employer, but Mueller as the entity that's responsible for the plan. I'm sure it had several other subsidiaries that were part of the plan. Doesn't make Mueller the employer of all those employees of those other subsidiaries any more than it does U.S. Pipe, unless I'm just missing something about corporate structure. Well, Your Honor, well, I guess this gets to, so the corporate structure is the same, Your Honor. That, at least, at least the organization of it on a high-level corporate, you know, superficial level was the same. It was U.S. Pipe as a membership, an LLC that passed on. But, subsequently, and this is what, this is where the purchase agreement really is actually and the facts on the ground, there was no need for U.S. Pipe on April 1st or whenever it was to reassume obligations that it already had. Those obligations for their employment and everything that was connected to their employment flowed through, for whatever reason, the operating entities. Mueller before April 1st, USP afterwards. Things like their vacation accruals changed. That doesn't happen, that you don't lose your vacation accruals if you're in the same employment. That clock started over for our clients as of April 1st. They lost their ability to participate in the old health and welfare plans. All of these things changed as of April 1st, which is all the indications of new employment, Your Honor. And that's, the facts that are established by the purchase agreement is what shows the substantive change of employers, if I've answered Your Honor's question, I believe. Just getting to the operation part, you say that for purposes of the Mueller operation, the plant is shut down, but they didn't shut down the plant. They never actually operated the plant, did they? Wasn't it USP that operated the plant at Bessemer? USP was the corporate form that held the plant. However, like many holding companies do, they have wings, they have subsidiaries that they operate through, and that's what Mueller was doing here, which is why it's a part of the control. I think you're confusing a division of a corporation with a subsidiary of a corporation. A subsidiary corporation, or LLC in this case, is a totally separate entity. Well, Your Honor, I disagree to this extent, because I liken it to insurance companies. Oftentimes you have an insurance company as a holding company, but they don't actually do the insurance and the underwriting. They have their subsidiaries that do it, so they'll conduct business, and that's how this plant was operated by Mueller and why it's within the control group. For these reasons, we respectfully request the District Court's judgment be overturned and that judgment be entered for the participants. Thank you. May it please the Court, and good morning. I'm Pat Brumbaugh, and with me is Franklin Sacka, and we represent the Appellees. Conscious of Judge Marcus's admonition, I'll get right to it. I think this is a simple case. Perhaps you'll tell me why I'm not right. In fact, these participants worked at the U.S. Pipe plant in Bessemer, Alabama for 18 years as of 2012. For three of those years, Mueller Group LLC owned 100% of the membership shares in U.S. Pipe. In 2012, Mueller sold those shares to another company, and Judge Huck, therefore, the corporate transaction is exactly as you described. It's a sale of all the stock in a company to another company. The argument that at some point the participants became employees of the parent company through some metaphysical transformation that I've never really understood is just counterfactual. They were always U.S. Pipe employees at this plant, period. Now, from those facts, we think it follows that there was no layoff because there was no cessation of employment, and there was no permanent plant shutdown just because the plant never shut down. From my perspective, it is literally that easy, but you layer over that the discretion with which the District Court and this Court on behalf of the plant administrator. So, if you view those facts, and you view the fact that the Court has to view them with a level of deference under its arbitrary and capricious review, I think it follows at the end of the day to the conclusion that the plant administrator did not wrongfully deny these benefits, and therefore, the District Court was right to I think you suggest that you should have stopped at the first step. Yeah, I have a little... Because if it wasn't terminated because of a plant shutdown or layoff, that's the end of the inquiry. That's the correct interpretation. That's right, Judge. It's a slight quarrel. I hate to argue too much when I win, but if you look at what the District Judge did in its Step 1 review, as I understand Step 1, you're supposed to take the facts, take the plan, then apply the facts to the plan, and instead, it looks like what the District Judge did is kind of more of a critique of the letter writing that went on between counsel to the participants and counsel to the plant administrator. I don't think the judge fairly construed that correspondence, but at the end of the day, it doesn't really matter. I just don't think that's what a de novo review is. I think the Court is supposed to apply the facts to the plan and come to a decision. Here, I just don't think the Court did that. It did something more like that when it got to Step 3, and it actually talked about, is there a plant shutdown, and were there layoffs? I think that if the Court had done the analysis it did at Step 3 at Step 1, they would never have gotten past Step 1. Now, to my way of thinking, that's an easier way to approach this. On the other hand, I have read that sometimes courts will apply a shortcut and just go straight to Step 3 because at the end of the day, it's probably easier to conclude that a decision is reasonable, grounded in reason, than de novo correct. However, it is that you all would like to get there. It doesn't matter to me, but I do think the decision should be affirmed. So, opposing counsel spent a lot of time discussing with us whether or not there's been a plant shutdown, whether or not there's been a layoff without a recall. So, to some extent, counsel is engaging in a discussion of a legal fiction. The plant really did not shut down, but is proceeding as though, for this case, that it did. In the Third Amendment, there's also a legal fiction engaged in when we talk about the revised definition of the severance date and the termination date, that it shall be deemed to terminate with the employer. And so, opposing counsel certainly seems to be carrying that legal fiction over to the plant shutdown. So, how would this amendment of this term, deemed to be a termination date, what effect would that have, if any, on the rest of the plan? On the rest of the plan? Or on the SER benefits? Yeah, I think that, well, number one, you can't, a termination date is a prerequisite, one of the conditions that you have to meet in order to be eligible for the SER benefit. It's also a prerequisite to plain old early retirement benefits, the plant also had those, and normal retirement benefits. For all those things, you have to have a termination date. So, I don't think that there being a termination date under the plan, changes the facts of the relationship of employment. At least, there's nothing in the plan that requires that to be the case. And so, when the plant administrator is looking at the situation and saying, well, where are their layoffs? You know, the layoffs aren't defined. Let me see, what are the facts? And the facts were that these plaintiffs continued in employment for at least two years after the closing date. So, I don't think that the Third Amendment does anything there. Now, in their briefing, he didn't really refer to this specifically, but the Third Amendment does say that it shall be, that the closing date shall be deemed to be a date that, you know, that they terminate their employment. But, you know, our argument is the whole reason that you use the word deem is because it's not so, right? I mean, the district court used the Black's Law Dictionary for definition for deem, and I'm sorry, I don't have it right in front of me, but it's something like to make, to give something attributes that they don't actually have, okay? So, if it were true that the closing date was actually the date that these folks terminated employment, then you would not have needed the Third Amendment at all, right? Because then, because the plan already provided that the date upon which these folks end their employment was the capital T, capital D termination date. So, to my mind of thinking, it doesn't really change anything. And particularly, you know, if you layer over the discretion that was afforded to the plan administrator to interpret these provisions and come to its decision. I want to briefly address Count 2, which counsel didn't get to, but I want to suggest, I think, what is, I think, a pretty simple way to deal with Count 2. So, Count 2 is a claim under 502A3. It's an equitable relief claim that is premised on the proposition that Mueller improperly cut back benefits, and the court should understand Count 2, the equitable relief claim, to be just an alternative way for the plaintiff to try to get the same relief that they're seeking in Count 1. And all you got to do is you look at the prayer for relief and the operative complaint, the kind of injunctive relief that they're seeking is an injunction to order the defendants to pay the benefits, or a, I think, a constructive trust over the benefits to the extent they aren't paid. So, it's really just another alternative way to get to the same result. Now, the cases we cite, Ogden and Katz, are two cases from this court that we cite in our briefs that stand for the proposition that if a plaintiff has an adequate remedy provided by ERISA, then they do not have the ability to plead and proceed under A3, what And in Katz, Katz was a case where the plaintiff had one count for failure to pay benefits under A1B, and then three counts for equitable relief under A3. The district court, at the outset of the case, dismissed the three equitable relief claims because they were finding that there was an adequate remedy under A1B. The court went on to grant summary judgment to the defendants on the benefits claim, then it went up to this court, and this court said, no, the court was right to do that, and the fact that the plaintiff ultimately lost on its claim for benefits is of no moment. There was still the claim under A1B was still provided an adequate remedy, and therefore you cannot plead, even, or proceed under A3. The plaintiff cites some cases in other circuits that would probably permit a pleading, right, a pleading in the alternative, but here, I mean, it doesn't really make a difference because we didn't, we're not talking about a motion to dismiss here. We're talking about motion for summary judgment. The court had a record before it and was able to conclude the plaintiff had an adequate remedy under A1B, therefore we don't need to proceed, we can't proceed with an equitable relief claim. I mean, that's, you know, clear controlling precedent, and that's how I'd suggest you dispose of count two, unless the court has any more questions. Let me ask you one thing. Yes, sure. So, if, assuming for the sake of argument that Mueller had not sold U.S. Pipe, continued to be the operating, the holding company, and the plant's still operating, and you have these employees, they would only, each employee would only be eligible for one of these three types, normal retirement, early retirement, or special early retirement, correct? Just if the plant's proceeding along normal course. No, I don't think that's right, Your Honor. I think that the special early retirement benefit is something that you can begin receiving before and without diminishing your ultimate. It would still. Yeah, yeah. Okay. I believe that's right, Judge. I bet my brother will know. Okay, that was just an inquiry that, a question that was open for me. Yeah, no, I'm sorry, I can't be sure about that. I'm pretty sure that that's right. Now, I do think that if you elect to take early retirement benefits, then I think that is actuarially reduced from what you would receive at your normal retirement date, which I think is 65. I think you could begin getting your early retirement benefits at 60, if I'm right. So, that is reduced actuarially. I don't think the special early retirement benefit is. Thank you. Thank you, Counsel. Yeah, thank you, Your Honor. I appreciate it. Your Honor, I want to address specifically the Third Amendment. The Third Amendment to your question before Judge Branch about what it does here is particularly tied to the layoff. And we spent a lot of time talking about the permanent plant shutdown, which is a part of this benefit, but it's also an independent ground for the layoff. The Third Amendment changing the definition of termination date and severance date, using big T, little termination, little t termination, is significant. The purpose of a definition is to bring clarity. Now, understanding what we're talking about within the plan, the intent that is expressed in the plan was that plaintiffs be considered terminated. Termination in terms of a layoff and termination are interchangeable as it's used here because that is a loss of one's employment through no fault of their own, and that is precisely what occurred here. So, under that part of the special early retirement benefit, plaintiffs or participants are entitled to receive this and have their expectations of this benefit fulfilled. Speaking of intent, isn't the basic intent of the special early retirement benefits to compensate employees when they are not working and earning wages to fill in that gap? No, Your Honor, it's not a form of unemployment benefit. It's really meant to compensate them for all the years of service that they have accrued under the plan, and then when that ends and they're no longer able to accrue service and build up continued credits for their retirement, that's where the special early retirement benefit comes in. The way it's structured, at least the way I see it, the intent was to fill in that gap when through no fault of the employee, he is unable to earn his livelihood, and therefore he's getting these special benefits, separate and apart from his regular retirement benefits. And here, there was never an interruption with those earnings. Well, Your Honor, I guess this gets to the point in one of the cases and also Michelle Cunningham's testimony below. If a participant is fortunate enough to be employed the day after they are terminated, that doesn't impact their eligibility for the benefit. One can be laid off and find employment the very next day and not lose a day's wages. That doesn't change the fact of the termination and layoff here. If I've answered Your Honor's question. Let me ask you a different question if I can. How do you get around Ogden and Katz with regard to the question of if you, in fact, lose on the A-1B, the 1132-A-1B claim on the merits, you could not proceed. Could you win the A-3 given what we said in Katz and Ogden? Your Honor, we would agree that no one can recover the same remedy twice, whether duplicative. You can only entitle to one. Yeah, but that's not quite what Katz and Ogden say. They say more than that. Katz makes it quite clear that if you lost on the merits under 1132-A-1B, you could not then proceed on an equitable theory under 1132-A-3 for the same factual conduct on which you had lost. What am I misapprehending here? No, Your Honor, we don't disagree with that premise and we don't disagree with Katz. Okay, so if you lose on 1132-A-1B because the court would otherwise find that it was neither laid off nor was the plan shut down and you wanted to proceed on the alternate theory, the equitable theory. It's an interesting theory. The difficulty you have, though, is navigating around Katz and Ogden. I'm asking you, how do you get around that? Well, Your Honor, under the facts of this case, quite frankly, we don't. However the court disposes of the evidence… If you lose on one, you can't possibly proceed under the second claim. Do you agree with that? We would agree in this case, Your Honor, because of how they're tied together. We pled these as alternative theories at the outset, believing that there may have been an amendment. So if you lose on one, the case is over? Yes, Your Honor. Thanks very much and thank you both. Next case is Jeffrey Geter v. Ike Okunwa.